# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## CASE NO. 16-22188-CIV-GOODMAN
## [CONSENT CASE]

DAPHNIE HARTIE CUFFY,

    Plaintiff,

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

    Defendant.

_____/

## ORDER ON CROSS-SUMMARY JUDGMENT MOTIONS

This case challenges a denial of social security benefits. Plaintiff Daphnie Hartie Cuffy and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, filed cross-motions for summary judgment. [ECF Nos. 24-2; 25]. The Commissioner's summary judgment motion also served as her opposition response to Cuffy's motion. [ECF No. 26]. Although the Undersigned's scheduling order required Cuffy to respond to the Commissioner's motion and authorized her to file a reply in support of her motion [ECF No. 23, ¶ 3], Cuffy did not file the mandatory response or optional reply, and the time to do so has long expired.

---

[1]     In accordance with Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this case. By reason of the last sentence of 42 U.S.C. § 405(g), no further action is needed to continue this suit.

As explained below, the Court **denies** Cuffy's summary judgment motion, **grants** the Commissioner's summary judgment motion, and **enters a final judgment** in favor of the Commissioner.

I. **Procedural Background**

In October 2012, Cuffy applied for a period of disability, disability insurance benefits, and supplemental security income. (R. 18, 168-175).[2] The Commissioner denied the applications initially and on reconsideration. (R. 18, 48-92). After a hearing (R. 33-47), an Administrative Law Judge concluded that Cuffy was not disabled (R. 15-26). The Appeals Council then denied Cuffy's request for review. (R. 1-6). Thus, the Commissioner's final decision is now subject to review.

II. **Factual Background**

Cuffy was 48 years old on her alleged onset date of June 15, 2010. (R. 168). Cuffy went to school until she was 15 years old, and she worked as a full-time cook until 2009. (R. 37, 187-88, 200). Cuffy received DIB benefits until March 31, 2014. (R. 20, 195). She claimed that her job as a cook required her to reach up to three hours per day. (R. 188). She disclosed that she ceased working when she moved to another state and that her condition was not severe enough to preclude her from working until June 15, 2010. (R. 199). Cuffy alleged disability based on problems with her left arm and shoulder, diabetes, and high blood pressure. (R. 199).

---

[2] Citations to ("R. __") refer to pages of the administrative record transcript. [ECF No. 20].

### III. Applicable Legal Standards

#### A. *Standard of Review*

In evaluating a claim for disability benefits, an ALJ must follow the five steps set forth in 20 C.F.R. §§ 416.920(a) and 404.1520, which the Court summarizes as follows:

1. Is the claimant performing substantial gainful activity? If not, then an ALJ next determines;

2. Does the claimant have one or more severe impairments? If the claimant does, then an ALJ next considers;

3. Does the claimant have a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled; if not, then an ALJ must determine claimant's [Residual Functional Capacity also known as] RFC;[3] and then determine;

4. Based on the RFC, can claimant perform her past relevant work? If so, then he is not disabled. If she cannot perform her past relevant work, then an ALJ must finally determine;

5. Based on her age, education, work experience, and the RFC, can claimant perform other work? If so, then the claimant is not disabled. If not, then the claimant is disabled and entitled to benefits.

*See, e.g., Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

The claimant bears the burden of proving that she is disabled within the meaning of the Social Security Act. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). In

---

[3] The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

3

reviewing the decision, the Court must consider the record as a whole and determine whether the ALJ applied the correct legal standard and whether his findings of fact are supported by substantial evidence in the record. *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips*, 357 F.3d at 1240 n. 8 (internal citation omitted).

The Court is authorized to enter a judgment affirming, modifying, or reversing the decision of an ALJ, with or without remand. 42 U.S.C. § 405(g); *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1302 n. 13 (11th Cir. 2000).

## IV. The ALJ's Findings

In denying Cuffy's claim for benefits, the ALJ followed the sequential five-step evaluation process for social security claims and determined that Cuffy was not disabled from the onset date, June 15, 2010, to the date of the decision, December 29, 2014. (R. 26). At step one, the ALJ found that Cuffy had not engaged in substantial gainful activity since the onset date. (R. 20). At step two, the ALJ found that Cuffy had the following severe impairments: osteoarthritis, obesity, hypertension, and diabetes mellitus. (R. 20). At step three, the ALJ concluded that Cuffy did not have an impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20).

4

The ALJ then found that Cuffy retained the RFC to perform medium-level work with occasional reaching above the shoulder in a workplace that is not high and exposed. (R. 22). In reaching this conclusion, the ALJ afforded little weight to the opinions of Cuffy's treating physician, Dr. James Jones, and her treating physician's assistant, P.A. Zahar Tahir. (R. 25-26).

Applying the RFC at step four, the ALJ found that Cuffy could perform her past relevant work as a cook as she actually performed it and as generally performed in the economy. (R. 25, 45-46). Therefore, the ALJ found at step four that Cuffy was not disabled, and did not move on to step five. (R. 25-26).

V.   ANALYSIS

   A.   *Vocational Expert ("VE") Testimony*

The ALJ relied on the VE's testimony to find that Cuffy could perform work as a cook. (R. 25, 45-46). The VE identified Cuffy's past relevant work as a cook and referred to the Dictionary of Occupational Titles ("DOT"), No. 315.361-010, which states that a cook position requires medium-level exertion. (R. 44-45). In response to a hypothetical question that included Cuffy's RFC that she "can occasionally reach above shoulder level" and that she "would need to avoid working in high and exposed places[,]" the VE testified that Cuffy could still work as a cook. (R. 45-47).

Cuffy claims that "before an ALJ may properly rely on the testimony of a vocational expert to support a disability determination, Social Security Ruling ("SSR")

5

00-4p[4] requires the ALJ to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the vocational expert and the DOT and to explain in the decision how the conflict was resolved." [ECF No. 24-2, p. 5]. Cuffy further claims that because the ALJ did not resolve this conflict, the VE's testimony was not substantial evidence to support the ALJ's decision to deny benefits. [ECF No. 24-2, p. 5].

Cuffy claims that the DOT describes a cook position as requiring "frequent reaching[,]" which directly conflicts with the RFC the VE relied on. (R. 22, 25, 45-46); [ECF No. 24-2, p. 6]; (DOT # 315.361-010).[5] But the VE and the ALJ specifically found that the VE's testimony is consistent with the information contained in the DOT. (R. 25, 47). The Commissioner also contends that, contrary to Cuffy's assertion, "frequent, non-specific reaching is not inconsistent with an RFC with unrestricted reaching except for occasional above-shoulder reaching." [ECF No. 25, p. 8].

However, the Court need not opine on whether there was a direct conflict between the DOT and the VE's testimony because Cuffy misconstrues the ALJ's obligation in this scenario. "[I]n this Circuit, the ALJ is not required to go on a searching inquiry into the contents of the DOT to verify consistency with the testimony of the

---

[4]    SSR 00-4p states that "[n]either the DOT nor the [vocational expert] evidence automatically 'trumps' when there is a conflict." *Id.*

[5]    The DOT's companion publication is the Selected Characteristics of Occupations ("SCO") and is located at www.nosscr.org/sco/sco.pdf.

VE." *Akins v. Commissioner*, No. 6:08–cv–1575–Orl–DAB, 2009 WL 2913538, at *6 (M.D. Fla. Sept. 10, 2009) (citing *Miller v. Commissioner*, 246 Fed. App'x. 660, 662 (11th Cir. 2007)); *see also Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999) ("when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT.").

In *Miller*, the Eleventh Circuit noted that even though SSR 00-4p was enacted after its decision in *Jones*, agency rulings do not bind the court. 246 F. App'x. at 662 (citing *Jones*, 190 F.3d at 1229–30). The *Miller* Court held that based on this, "assuming that an inconsistency existed between the testimony of the vocational expert and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the vocational expert." 246 F. App'x. at 662. The *Miller* Court reasoned that "[o]ur precedent establishes that the testimony of a vocational expert 'trumps' an inconsistent provision of the DOT in this Circuit[,]" thus, the ALJ's reliance on the VE testimony in this scenario to support denial of disability benefits was supported by substantial evidence. *Id.* (citing *Jones*, 190 F.3d at 1229–30).

Based on this Eleventh Circuit precedent, Cuffy's argument is unconvincing. Because this DOT/VE-conflict contention is her only argument raised to prove that the ALJ's reliance on the VE's testimony was not supported by substantial evidence, Cuffy has not met her burden.

B.   *Cuffy's Treating Providers*

Cuffy next argues that the ALJ committed two errors relating to her treating providers, Dr. Jones and P.A. Tahir.[6] First, Cuffy claims that the treating providers' opinions show limitations far exceeding the ALJ's RFC finding that Cuffy could perform medium-level work with occasional reaching above the shoulder. (R. 22); [ECF No. 24-2, p. 10]. Second, she claims that the ALJ failed to provide "good/specific/supported reasons" for assigning little weight to the treating providers' opinions. [ECF No. 24-2, p. 12].

The Court is not persuaded by Cuffy's first argument. Even if the treating providers' opinions provided for limitations far exceeding the ALJ's RFC, in this Circuit, the **ALJ** has the ultimate responsibility of assessing a claimant's RFC after considering the record as a whole. *Carson v. Comm'r of Soc. Sec.*, 300 F. App'x 741, 743 (11th Cir. 2008) ("While statements from treating physicians regarding the level of work

---

[6]   Dr. Jones treated Plaintiff from 2012 to 2013 and is board-certified in family medicine. [ECF No. 24-2, p. 14]. The Commissioner argues that these visits with Dr. Jones were not frequent, and that family medicine is not a specialty in any area of medicine pertinent to Cuffy's impairments. (R. 286-306, 373-380, 383-408).

P.A. Tahir saw Cuffy in 2014. [ECF No. 24-2, p. 9]. Cuffy acknowledges in her motion that a physician assistant "is not considered an 'acceptable medical source[]' under the Regulations." [ECF No. 24-2, p. 14 (quoting 20 C.F.R. § 404. 1527(a)(2); SSR 06-03p)]. However, the Commissioner does not address this acknowledgment nor does she discuss whether the treating physician's standard extends to physician assistants. Thus, it is unclear to the Court whether the Commissioner contends that I am not required to apply a treating physician standard to a physician's assistant. However, because I cannot make arguments for the Commissioner, I will analyze the weight accorded to P.A. Tahir in the same manner as I do for Dr. Jones.

8

a claimant can perform are important, they are not determinative because the ALJ has the ultimate responsibility to assess a claimant's [RFC]") (internal citations omitted); *see Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (reviewing RFC determination at step four and finding that "[a]lthough a claimant may provide a statement containing a physician's opinion of her remaining capabilities, the ALJ will evaluate such a statement in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ.") (internal citations omitted).

Here, the ALJ evaluated Cuffy's medical condition by considering the entire record, which included review of Cuffy's treating providers' opinions, the treating providers' notes, as well as the opinions and notes of other medical providers, including the consultative internal medicine examination performed by Dr. Monroe Scheiner on November 13, 2012.[7] (R. 29, 312-315, 413-415); *See Parks ex rel. D.P. v. Comm'r, Soc. Sec Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (stating that there is no requirement for the ALJ to refer to every piece of evidence as long as the court "'can conclude that the [ALJ] considered [the claimant's] medical condition as a whole.'") (quoting *Mitchell v. Comm'r, Soc. Sec. Admin*, 771 F.3d 780, 782 (11th Cir. 2014) (inner quotation marks omitted)).

---

[7]  When discussing this examination, the Commissioner erroneously refers to the doctor's name as M. Mandel, who apparently works at the State of Florida Department of Health Division of Disability Determinations and received Dr. Scheiner's report and treatment notes. (R. 23-24, 272-279); [ECF No. 25, p. 3]. However, the ALJ correctly refers to Dr. Scheiner in his report, and the Court will therefore overlook the Commissioner's incorrect reference because I am determining only whether the *ALJ*'s determination was supported by substantial evidence.

Furthermore, the Court is precluded from reweighing the record evidence the ALJ relied on to determine the RFC. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [the claimant] points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes [the court] from 're-weigh[ing] the evidence or substituting [the court's] judgment for that of the Commissioner] . . . even if the evidence preponderates against' the decision.") (quoting *Bloodsworth*, 703 F.2d at 1239). Thus, the Court is unpersuaded by Cuffy's first argument.

Moving on to Cuffy's second argument, the only question that remains is whether the ALJ accorded appropriate weight to Dr. Jones' and P.A. Tahir's opinions. Opinions of treating physicians must be given "substantial or considerable weight unless good cause is shown to the contrary." *Lewis*, 125 F.3d at 1440 (internal citations omitted). Good cause "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41 (internal citations omitted). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* (internal citations omitted).

"[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

Good cause exists for the ALJ to accord Dr. Jones' and P.A. Tahir's opinions little weight. The ALJ found that the opinions were inconsistent with the evidentiary record as a whole, as they were not supported by their treatment notes (or the treatment notes of other doctors). (R. 29, 272-278, 312-315, 413-415).

For instance, while both Dr. Jones and P.A. Tahir opined that Cuffy could sit, stand, and walk less than 2 hours in an 8-hour workday, the ALJ noted that Dr. Jones' treatment notes from 2012 to 2013, and those of consultative examiner Dr. Scheiner from November 13, 2012, all showed that Cuffy walked normally, without gait disturbance, muscle atrophy, or weakness. (R. 25, 29, 273-275, 292, 299, 304, 394, 400, 406). Furthermore, the ALJ noted that Cuffy's examinations revealed no sensory deficits and that she had normal deep tendon reflexes. (R. 25, 239, 275, 282-283, 340).

In addition, though Dr. Jones assessed that Cuffy could never lift more than ten pounds and could only occasionally lift less than ten pounds, the ALJ could not reconcile this finding with Dr. Scheiner's determination that she had full strength in her upper extremities and could hold a five-pound medicine ball in either hand, open and close a door, and hold a pencil in either hand. (R. 25, 275, 314).

Furthermore, when Dr. Scheiner examined x-rays of Cuffy's left shoulder area, the ALJ observed that Dr. Scheiner found that her left shoulder was within normal limits and lacked crepitus.[8] (R. 275-276, 279). In addition, Dr. Scheiner's findings also accord with the medical notes of Cuffy's emergency room visit on August 6, 2013, where upon physical examination, it was determined that her upper extremities were non-tender and normal to inspection. (R. 340). In sum, the ALJ was persuaded by the fact that Dr. Scheiner "found no abnormalities, except for [Cuffy] complaining of pain upon range of motion of the left shoulder." (R. 25, 275).

The ALJ clearly articulated other reasons for providing Dr. Jones' and P.A. Tahir's opinions little weight. The ALJ found that the opinions were inconsistent with the routine and conservative treatment Cuffy received. (R. 25, 272, 280-306, 360-412); *Sheldon v. Astrue*, No. 07-12677, 2008 WL 624748, at *1 (11th Cir. Mar. 10, 2008) ("A doctor's conservative medical treatment for a particular impairment tends to negate a claim of disability."). The Commissioner explains in her filings that Dr. Jones saw Cuffy only periodically and prescribed pain medication beginning in 2013, years after Cuffy's alleged disability onset. (R. 168); [ECF No. 25, pp. 10-11].

In her summary judgment motion, Cuffy tries to refute the ALJ's finding regarding her conservative treatment and cites to her hearing testimony where she

---

[8] Crepitus "is a medical term to describe the grating, crackling or popping sounds and sensations experienced under the skin and joints or a crackling sensation due to the presence of air in the subcutaneous tissue." WIKIPEDIA, https://en.wikipedia.org/wiki/Crepitus (last visited Mar. 12, 2018).

stated that she was referred to a specialist and a surgeon. [ECF No. 24-2, p. 16 (citing R. 39)]. In response, the Commissioner claims that her treatment records do not corroborate her statement. [ECF No. 25, p. 10]. The Court notes that Cuffy did not attempt to refute the Commissioner's argument as to lack of corroboration by filing a response to the Commissioner's motion or a reply to her own motion. Cuffy's only explanation is that she did not seek more active treatment because she could not afford it.

In the Eleventh Circuit, poverty may excuse a claimant's noncompliance with a prescribed treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). However, on this point, to find error in an ALJ's determination that a claimant was not disabled, the claimant's inability to pay has to be "inextricably tied to the [ALJ's] finding of noncompliance." *Sugarman v. Berryhill*, No. 15-CV-20332, 2017 WL 4868809, at *5 (S.D. Fla. Oct. 27, 2017) (finding that *Dawkins* was distinguishable because the ALJ considered many other reasons for finding disability other than the claimant's lack of compliance with the prescribed treatment that was based on claimant's inability to pay).

Here, without proof that her treating providers even prescribed more active treatment, consideration of Cuffy's inability to pay is of no consequence. This is because the ALJ's decision of non-disability was not based on Cuffy's lack of compliance with her doctor's and p.a.'s prescribed treatments. Rather, it was based, in part, on her treating providers' opinions not being in line with the treatment that they actually

prescribed to Cuffy. Thus, based on Cuffy's unrefuted conservative treatment, I have no reason to discount the ALJ's allocation of little weight to Dr. Jones' and P.A. Tahir's opinions.

In the decision, the ALJ also noted that Dr. Jones' and P.A. Tahir's opinions were inconsistent with the claimant's activities of daily living. (R. 25). The ALJ stated that Cuffy was able to do "routine chores at home such as cooking and cleaning" and was "able to shower and self-groom." (R. 24). The Commissioner argues that the limitations reported in the treating providers' opinions "are so debilitating that even these activities are enough to discredit them." [ECF No. 25, p. 11 (citing R. 25, 312-315, 413-415)]. The Court is not persuaded by this argument because the Eleventh Circuit has warned against equating a claimant's ability to engage in certain activities of daily living with the ability to perform a full-time job. *See Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 418 (11th Cir. 2015) (citing *Lewis,* 125 F.3d at 1441). Even so, as stated above, the ALJ has articulated many *other* reasons to discredit the treating providers' opinions, thus, this sole finding does not warrant remand.

Accordingly, all of the ALJ's findings taken together prove that the "little weight" allocated to the treating providers' opinions was supported by substantial evidence. The issue is not whether the record evidence might support a different finding, but whether substantial evidence supported the ALJ's determination as

articulated in the decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). As a result, Cuffy is not entitled to remand.

**VI.    Conclusion**

The Court **denies** Cuffy's summary judgment motion, **grants** the Commissioner's summary judgment motion, and **enters a final judgment** in favor of the Commissioner.

**DONE AND ORDERED** in Chambers, Miami, Florida, on March 14, 2018.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record